Judge Chagres, Judge Cohen, Judge Gordon, good morning. May I, Your Honor, reserve five minutes for rebuttal in regards to this particular matter? Thank you, Your Honor. Your Honor, this is a case in which a juror contends that an individual approached her who had a romantic relation with her and who had not seen each other for a period of time to, in fact, tamper with a jury in simple words. She claimed that he came to her, spoke to her, and mentioned a word, nitroglycerin, in which she could not understand what it was. But subsequently, he said something to the effect of not guilty. Moreover, that he had offered her a sum of money in regards to no particular defendant, no particular individual identified as to who, not guilty, or anything of that nature occurred. Doesn't the record also show that he later said, do you need more than $1,500? And then subsequently, yes, she claimed that he came back two seconds or whatever period of time after and suggested, if this is not enough, and she said, well, I'm not comfortable with that, meaning this situation and whatnot. However, if she was not comfortable with that, the first thing, and this is where some of the evidence comes in that I object to, and I claim that this should not have been admitted, meaning one, there was a telephone conversation with her sister, the least, as well as, I believe, a couple or maybe two other individuals, before the text message, which became the critical issue in this particular case, came in, where she said, I told you I didn't want to be a no jury. Now, if, in fact, that is the conversation that she had with her sister, the least, how could she say, I told you I didn't want to be to a jury, if, in fact, she didn't discuss the fact of a jury? I don't wish to re-argue. Yes, Your Honor. How is the error of reading the text message into the record not harmless, considering that the witness had testified to the contents of the very text message? But, you see, that's where the problem comes in, and it's kind of a tricky type of scenario with regard to trying cases. Her testimony, I'm sorry, her testimony when it started out, she started to suggest, I don't recall, I don't recall. If you don't recall, then it seems as if this statement becomes the basis of your recollection, and, therefore, it shifts, and it's the back door to getting the type of evidence in, which, we thought, Hadn't she testified, hadn't she testified about the content, essentially, of the message before the Exhibit 3 that you complain about was shown to her and she read from it? That is correct, but, yes, I agree absolutely, no ifs, ands, and buts about that, yes. Right, so if that's the case, if she had basically said the content of it and then read it, and your complaint is that she read it, but it was already in front of her because she said it, it's sort of a what's the difference, right? Okay, in other words, in other words, it would have come in and it's a witness statement against someone else, and, therefore, at worst, at worst, it may have been harmless error. All right, let me shift gears now, if I may, then, please. When Dr., I'm sorry, Mr. Trewick, that is the custodial of record, read into the record the so-called Sprint Nextel same text, I contend that that was a confrontational issue. That was error, especially in view of Massachusetts Diaz, I'm sorry, Melendez Diaz versus Massachusetts. You had the opportunity to confront him, though, and do cross-examination? Cross-examination is not that you ask or you talk to a witness. He was a custodial of record. Technically speaking, how could I confront him if he did not prepare those certificates? He came in as a custodial of record. That's true, you have a very good point there, but wouldn't a record of a text message improperly authenticated to be invisible as a person's sense impression of the witness? I don't... Improperly authenticated? Properly authenticated. Wouldn't it be invisible as a person's sense impression? I wouldn't say so, because the fact of the matter is this, Judge, if I may. Sure. During the factual scenario, she was living in a house with her uncle, who testified, Mr. Ettenborough, and her grandmother, who did not testify. She did not go back into the house and say to them, this is what just happened. She then had a telephone conversation with her sister, Denise. A telephone conversation before the text messages were even prepared. And I am saying, yes, it may have been authenticated in terms of what she had said, in terms of your question, Judge Jordan, in regards to whether or not it came in as harmless error. But the fact scenario seems to suggest that it became a self-serving statement. It became my backup plan with regards to making sure that I have something documented to indicate this is what I'm going to say, this is how I'm going to back it up in regards to what I'm saying. Moreover, if I may, when she submitted this note, don't forget, I'm sorry, when I said don't forget, I'm sorry. Text messages. When she went before the court, the judge, with regards to the complaint, nothing absolutely, initially, was mentioned in regards to Mr. Blackett. She came in there suggesting... Sure, but the jury, when, when, when, let me ask this, did you have a chance to cross-examine her about that very point? That is correct. Yes, I did. Okay. But again... So the jury got to hear it, they got to think about it, they heard your able argument, the able argument on the other side, they weighed it, and they decided, they believed her when she said, well, I didn't want to bring it up the bribe to start with if I could get out the jury without mentioning it. That is correct. So what's wrong with the jury making that decision? That's why we've got juries, right? They hear the arguments, they hear the attack on credibility, they weigh the credibility, they make a judgment. That is correct. And I would have to concede that point, Judge Gordon, no ifs, ands, and buts. However, the problem was simply this as far as we were concerned in regards to this trial. How do you stop someone from, in fact, saying things, in essence, that don't seem to fall into place? If she was told as a juror, do not discuss this case with nobody, why did she discuss it with her sister, Denise, others, individual, and then text? If she wanted to get out of the jury, all she had to do was put up her card when she came into court and said, Judge, I don't want to be in this case anymore. I just found out something that I should have known before, but I didn't know. She never said that. This came about because at that stage, the government decided to prosecute Mr. Blackett. Help me understand, though, how what you've just argued is legally relevant to the point we're wrestling with. The issue you've raised in your brief is it was wrong to admit this under 8035 and also your confrontation clause issue. How Ms. Smith ended up finally telling the court the real reason for her problem and that getting in front of the jury in a bribery trial, how does that background information affect the evidentiary point and the confrontation clause point that you're making to us? I agree that to an extent, as long as there's a rational basis with regards to the juror's determination, it does not seem that it makes any sense for me to even be arguing it. I believe that it was background I was trying to give to the court in understanding the scenario upon which one person says something, and it does not necessarily make it right because they have a backup in regards to saying, I said it because here it is that I said it. But I didn't say immediately at the time it occurred, and I violated certain conditions upon me serving as a juror at the time. Not to suggest that she was automatically disqualified, i.e., she was not a juror. She was a juror. She was a public official as far as the law is concerned. The problem was, did she, in fact, was she believable? Mr. Graves, just getting back to the text message, why wasn't the custodian of records independently capable of authenticating the business record regardless of the amnesty that contained in the property? I think it was 5A. Yes. Because the judge, what the judge did quite deftly, cleverly, he said, this is not an expert witness. He's not coming in here as an expert witness. He's coming in here as a facts witness, a custodian of the record. Therefore, I will not commit it, and he gave a cautionary instruction with regards to that issue. And I am saying, in essence, he did not know anything. Yes, he talked about my personal texting. I know about texting. I've been in court before. I think my time is up. Please finish your answer. Okay. I'm sorry. And the whole proposition was he basically could not testify, and the judge recognized it because all he was… He wanted to let the testimony in. He did commit it to come in, and we contended that it was error for that to have occurred. Well, my question is, why was he incapable of authenticating the business record, regardless of what was in the 5A? There was no issue. I think, yes. In fact, I believe he did testify. It was a custodial record. It was made during the time of the record. He was qualified under that situation in terms of those questioning as a custodian of record. My issue was, he was not the certifying person that came into court with regards to that document, and it falls under that Melendez-Diaz v. Massachusetts and head to foot, Bull Cummings v. New Mexico. About the 20 of those cases offhand, what do they hold? Well… He said he's a custodian. These are ordinary courses of business. Exactly. What are those cases you cite? What do they stand for? The Bull Cummings v. New Mexico case is a Supreme Court 5-4 decision in which it says a taxology or a taxomat, I'm sorry if I'm not saying it right, a blood alcohol testing. Someone had taken the testing that did not testify, and someone else came in to testify on his behalf. What the court held is that because what this new person was coming in to testify was testimonial, it was error to permit it to come in. In that case held, the person testifying came in as an expert, not as a custodian of the record. The man here came in as the custodian, not as an expert. But as I said, in regards to there was, in fact, some sort of cross-examination with him, but it could not have been an effective cross-examination because there was nothing he could have been questioned about with regards to the actual record itself. And the confrontation, as far as we are concerned, is dealing with how can I make this trial fair by dealing with the person who has been a witness, not necessarily a custodian who passes paper, but a witness against that individual. And that is what we were contending, if I may please, Your Honor. Thank you again. Thank you. Thank you again. Good morning. May it please the Court, my name is Nolan Page. I represent the United States in this matter. I submit to the Court that the evidence of record in this case supports the appellant's conviction and I'm prepared to answer any questions that the Court may have. For starters, what evidence is there in the record that the witness adopted the contents of the text message, which is at the heart of this case here, at the time the substance was fresh in her mind? What's the evidence there? In the record, at Jordan Pitts at 85, Ms. Smith testified that it was a copy of the text message that she sent to her sister on that date. Yeah, but she doesn't say there that she adopted that this was her past recollection recorded or her present sense impression at that time. I mean, she just said that's a text message she sent. Yes, she said that that was a text message that she sent, and you take that in conjunction with her testimony that she sent that text message, right after Mr. Blackett left her house, which is in the appendix at 83 and 86, that I believe that satisfies that third foundational requirement for 8035. How did Exhibit 3 come into being? Where did they get the text of the text message? That came in later through the testimony of Ms. Smith's sister, Ms. Delise Smith. I'm sorry, Mr. Page, I was not clear. Let me try again. How did the document itself, the exhibit, get created? I mean, somehow or other, the text itself, the message, the words of the message, were preserved someplace and somebody got them back and somebody put them on that exhibit and brought them into court, and I didn't see that that information was in the record, but maybe I missed it. Well, actually, Your Honor, it is in the record. Her sister, Delise Smith, testified, this is in the appendix at 124, that on that evening her sister sent her the text message, and then Agent Orange and Tyson testified as well, the appendix at 140 to 144, that Delise Smith sent him the text message. So this wasn't gotten from Sprint. This was gotten from the investigator that Delise sent it to. The investigator saved it, and that's how we have it? That's correct, and both of those pieces of testimony are part of the record. Okay. So if that's the case, what purpose was then served by having the Sprint custodian of records come in? If it wasn't a record from Sprint, but it was a saved text from Delise to the investigator? The Sprint custodian actually testified with respect to a number of things that happened with respect to the telephones on that night. He also testified with respect to phone calls that Judith Smith actually made to her sister and others. So that testimony that he provided with those records showed that those phone calls actually went from Ms. Smith to those persons. But as to the text message, he didn't have anything to add, did he? No, he did not. Okay. Although not verbatim, the witness testified to the contents of the text message, although not verbatim. So what precedent is there that says the requirement that the witness be unable to recollect is satisfied in a case like this where the witness already testified to the contents of the text message? Well, she gave a general summary. She gave a general summary. I read it. She pretty much, not verbatim, as I mentioned. That's correct. She testified to the contents of that text message in language which was not in the text message, but was exactly the same statement. She did give the substance with respect to that, but there were some other things in that text message as well that she did not describe in that summary. And you didn't ask her about it? I'm sorry? And she wasn't asked about it? No, she did not ask about those. Whatever she asked, she testified substantially to what was in the text message. So I'm not acquainted, I don't think you are either, of any precedent that says under facts such as this that you could then bring in the text message as past recollection or anything else recorded or whatever, you know, what rule you're using there. I would just submit to the court, though, that once those three foundational requirements were met, that the court didn't abuse this discretion by allowing it to be read. Well, they weren't. She never stated. She never stated, I can't remember what I said, but I know what I said is in a text message which I telephoned and showed her that my recollection at that time was correct and that's not what happened here. And then they introduced the text message. And when the text message came in, as far as I'm concerned, the case is over at that point. Well, again, but she testified that she could not recall exactly word for word or precisely what the text message stated. But you don't deny that she testified accurately to the substance of what she was asked that was in the text message. It was fairly accurate, but it wasn't the full substance of the text message. Word for word? Because is that the position that the government is taking here, that if you don't remember something, and I believe that was her phrasing, that she didn't remember it word for word, that if you don't remember something word for word, your memory is sufficiently impaired that under 8035 it can be said that you don't remember? No, that's not a requirement that it be word for word, but I think it does go to the fully part of testifying fully with respect to the text message. Well, what facts and evidence makes the addition, if this was improperly admitted, makes the addition of the text message harmless? And if the addition of the text message was harmless, why did the government seek to have it admitted? You're saying it was harmless in any event? Yes. If it's harmless, why have it admitted in the first place? Because the general summary that she gave was not fully. And what I would add to it, what makes it harmless, is what Your Honor actually pointed to, the fact that she actually did give a summary of the text message in some fashion. And also I would add that the abundant amount of untainted evidence in addition to that text message that was presented to the jury actually was enough to show that this error was in fact harmless. If it was error, I mean, you're not conceding it was error, are you? No, I'm not conceding that it was error. If I've understood you, just to recap, you're saying the reason it's okay under 8035 is because 8035 has as its first prerequisite that you can't fully remember, and you equate fully here with being able to remember not just the substance of it, as Judge Collins accurately pointed out she gave, but the exact language. Is that the line of argument? Well, the rule says fully and accurately. Okay. I got you. Thanks. Well, she testified fully to the extent she was asked about it fully.  And I would add that it was to the extent that she could recall. Though she was on two separate occasions in the record, she said that she could not recall. Okay. So let's assume the worst for yourselves. It's error. How is it harmless? Because of the abundant amount of untainted evidence, which was the testimony from Jeanette Smith, where she identified Mr. Blackett and the fact that he came to her house on two occasions on that night. He even came back and offered her more money. There was the testimony of her sister, Mr. Lee Smith, that immediately after, she got the phone call as well as the text message from her sister, Jeanette Smith, as well as the testimony of Mr. Blackett himself, who actually admitted that he went over that night, and he testified that he only went there to rekindle a relationship. I feel that that's an abundant amount of untainted evidence that weighs in our favor. Any more questions? I have nothing further. And again, I ask that this Court reject each and every argument that has been made by counsel and for the reasons argued in my brief as well as my argument today. Thank you. Thank you. If you'll excuse this Court, I made a mistake earlier. I did not introduce myself. My name is Leonard Bernard Francis, Jr. I'm sorry I was so enthused in making my arguments I forgot about me, and I'm sorry in regards to that. I apologize for that. There was one question, Judge Cohen, you had asked in terms of trying to explain the Bull Cummings case. Also, if we may, the Melendez-Diaz case versus Massachusetts also said that that record that was prepared and a certificate given